UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

LOUISVILLE DIVISION

CIVIL ACTION NO.:  3:25CV-521-JHM

PAMELA A. BECK, pro se,

PLAINTIFF,

V.

JASON A. KRON, individually and as member of Kron Ridge Investments LLC;
LOUISVILLE METRO GOVERNMENT; CHAD HESS, individually and in his official
capacity; DONALD H. "CHIP" RIDGE III, individually and as member of Kron Ridge
Investments LLC; KRON RIDGE INVESTMENTS LLC; ZIPPY SHELL OF GREATER
LOUISVILLE; MILLENNIAL TITLE, LLC; LEGAL 1031 EXCHANGE SERVICES,
LLC; KENSINGTON VANGUARD NATIONAL LAND SERVICES, LLC; HOWARD
BALL MOVING & STORAGE; CENTRAL COMMERCE PARK, LLC; KENTUCKY
BOURBON BARREL, LLC; ASTRELLA FUND, LLC; BK LAW, PLLC; THE
CARLYLE GROUP, L.P.; ZIPPY SHELL INCORPORATED; [JOHN DOES 1-50,
representing additional enterprise participants],

DEFENDANTS.

COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983, 18 U.S.C. § 1962 (RICO), AND
PENDENT STATE LAW CLAIMS

**FILED**

James J. Vilt Jr,
Clerk

8/19/2025

U.S. District Court
Western District of Kentucky

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

This action seeks redress for systematic constitutional violations perpetrated by a sophisticated criminal enterprise that has operated continuously for over nineteen years. Defendants JASON KRON and DONALD "CHIP" RIDGE, operating through their joint entity KRON RIDGE INVESTMENTS LLC and an extensive network of shell companies, have engaged in a pattern of racketeering activity including federal fraud, money laundering, and systematic civil rights violations targeting vulnerable communities.

The enterprise has defrauded the United States government of $54,100 through fraudulent Paycheck Protection Program (PPP) loan applications while simultaneously conducting a harassment campaign against PAMELA A. BECK, a 60-year-old disabled resident of West Louisville, Kentucky. This dual criminal scheme—federal fraud financing local harassment operations—demonstrates the sophisticated nature of defendants' racketeering enterprise and warrants both civil relief and federal criminal prosecution.

Additionally, LOUISVILLE METRO GOVERNMENT and its agents have engaged in systematic retaliation against plaintiff for exercising her constitutional right to petition for redress of grievances, creating a pattern of selective enforcement that violates the First and Fourteenth Amendments to the United States Constitution.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to: •    28 U.S.C. § 1331 (federal question jurisdiction) • 28 U.S.C. § 1343 (civil rights jurisdiction) • 42 U.S.C. § 1983 (deprivation of constitutional rights) • 18 U.S.C. § 1964 (civil RICO enforcement)

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the unlawful conduct occurred in Jefferson County, Kentucky, where multiple defendants reside and conduct business within this judicial district.

The amount in controversy exceeds $2,000,000, exclusive of treble damages, punitive damages, attorney fees, and costs.

### III. PARTIES

#### A. Paintiff

PAMELA A. BECK is a 60-year-old, disabled woman, U.S. citizen residing at 1710 W. Burnett Avenue, Louisville, Kentucky. She has owned her property outright since 2008 and has been the target of systematic harassment by defendants' criminal enterprise for over three years, beginning in August 2022.

#### B. The Criminal Enterprise Defendants

**Enterprise Leaders and Federal Fraud Perpetrators:**

JASON A. KRON is an individual residing in Jefferson County, Kentucky, who has operated an extensive criminal enterprise since at least 2000 through systematic creation of shell companies across multiple states. Kron is a member and signatory of Kron Ridge Investments LLC, the entity that fraudulently obtained $54,100 in federal PPP loans. Since 2000, Kron has created or controlled over twenty shell companies including Atlas Title LLC, Colonial Title LLC, Heritage Title Services LLC, Grade Four Marketing LLC, Halo Networks LLC, Hotel Investment Partners LLC, and Eastgate Hotel Associates LLC.

DONALD H. "CHIP" RIDGE III is an individual residing in Jefferson County, Kentucky, operating as a licensed REALTOR® through the Greater Louisville Association of REALTORS

and owner of Millennial Title, LLC. Ridge is the business partner of defendant Kron since at least 2003 and co-member of Kron Ridge Investments LLC. In spring 2016, Ridge publicly confirmed their partnership, stating to Louisville Business First: "Ridge, who also is president of Louisville real estate services firm Millennial Title Co., started the Zippy Shell franchise in Louisville in spring 2016 with business partner Jason Kron after they invested $250,000 into the business opportunity."

KRON RIDGE INVESTMENTS LLC is the joint criminal enterprise entity created by defendants Kron and Ridge, existing since at least 2007. This entity fraudulently obtained two PPP loans totaling $54,100 ($29,100 in April 2020 and $25,000 in January 2021) from Stock Yards Bank & Trust Company through material misrepresentations to the Small Business Administration. Both loans were subsequently forgiven, allowing defendants to retain the fraudulent proceeds. On February 17, 2016, this entity filed a Certificate of Assumed Name to conduct business as "Zippy Shell of Greater Louisville," demonstrating its central role in the criminal enterprise.

**Enterprise Business Operations:**

ZIPPY SHELL OF GREATER LOUISVILLE is the assumed name under which Kron Ridge Investments LLC operates, established through the joint $250,000 investment by defendants Kron and Ridge in spring 2016. This franchise serves as the operational vehicle for harassment activities against plaintiff and provides the business cover for the criminal enterprise.

HOWARD BALL MOVING & STORAGE is a company acquired by defendants' Zippy Shell operation in 2017, providing personnel, equipment, and infrastructure for systematic harassment operations against plaintiff. The acquisition provided defendants with "six Howard Ball Moving

& Storage employees and gained 40,000 square feet of leased storage space" adjacent to plaintiff's residence.

CENTRAL COMMERCE PARK, LLC owns and operates property at 1661 W. Hill Street, directly adjacent to Plaintiff's residence, serving as the primary staging ground for coordinated harassment operations conducted by enterprise employees and equipment.

**Criminal Infrastructure and Shell Companies:**

MILLENNIAL TITLE, LLC is controlled by defendant Ridge, facilitating legal and financial mechanisms for the enterprise's property manipulation schemes while providing regulatory cover through Ridge's REALTOR® license.

LEGAL 1031 EXCHANGE SERVICES, LLC and KENSINGTON VANGUARD NATIONAL LAND SERVICES, LLC are controlled by defendant Kron, providing financial infrastructure for real estate manipulation and serving as components of the money laundering network.

BK LAW, PLLC was created by defendant Kron on August 26, 2024, in anticipation of legal exposure, demonstrating premeditation and an attempt to cloak future criminal conduct under attorney-client privilege.

ASTRELLA FUND, LLC was created by defendant Ridge in Wyoming on July 11, 2025, within 48 hours of being served with state court process, evidencing obstruction of justice and systematic asset concealment to defeat anticipated judgments.

**Corporate Financial Backing:**

THE CARLYLE GROUP, L.P. is a multinational private equity firm that has provided over $180 million in investment to Zippy Shell Incorporated, knowingly or recklessly funding the enterprise's nationwide expansion and harassment operations.

ZIPPY SHELL INCORPORATED operates the nationwide franchise system with over 71 facilities, facilitating the enterprise's systematic targeting of vulnerable communities across multiple states while providing corporate cover for local criminal operations.

### C.  Municipal and Official Defendants

LOUISVILLE METRO GOVERNMENT is a municipal corporation and political subdivision of the Commonwealth of Kentucky, responsible for enforcement of municipal codes and employing the individual defendants acting under color of state law. Louisville Metro Government is sued in its official capacity for constitutional violations committed through official policies, customs, and practices that violate citizens' constitutional rights.

CHAD HESS is a Code Enforcement Officer employed by Louisville Metro Government, acting under color of state law in his official capacity and individually liable for constitutional violations committed in the course and scope of his employment.

## IV. FACTUAL ALLEGATIONS

### A.  The Criminal Enterprise Formation and Structure

1. Beginning in 2000, defendant Jason Kron began systematically creating shell companies to facilitate criminal activity, including Eastgate Hotel Associates LLC (October 12, 2000) and Hotel Investment Partners LLC (October 12, 2000).

2. In 2003, defendant Ridge joined the criminal enterprise, with Kron creating Heritage Title Services LLC on March 20, 2003, listing Ridge as the registered agent, establishing their criminal partnership in the title insurance industry.

3.  Between 2003-2007, defendants expanded their shell company network, creating Atlas Title LLC, Colonial Title LLC, HS Title LLC, Action Abstractors LLC, Great American Title LLC, and Heritage Title Alliance LLC, all utilizing the same business address at 1717 Alliant Avenue, Suite 5, Louisville, Kentucky.

4.  On February 28, 2007, defendants filed a Statement of Change of Principal Office Address for Kron Ridge Investments LLC, moving from 159 St. Matthews Avenue to 1717 Alliant Avenue, demonstrating the entity's existence and their control over this central criminal vehicle.

**B.  The Zippy Shell Operation and PPP Loan Scheme (2016-2021)**

5.  On February 17, 2016, Kron Ridge Investments LLC filed a Certificate of Assumed Name with the Kentucky Secretary of State to conduct business as "Zippy Shell of Greater Louisville," with the filing signed by Jason Kron as member, effective March 1, 2016.

6.  In spring 2016, defendants Kron and Ridge jointly invested $250,000 to establish the Zippy Shell franchise in Louisville, as publicly confirmed by Ridge in a September 26, 2017 Louisville Business First article stating: "Ridge, who also is president of Louisville real estate services firm Millennial Title Co., started the Zippy Shell franchise in Louisville in spring 2016 with business partner Jason Kron after they invested $250,000 into the business opportunity."

7.  In 2017, the Kron-Ridge partnership acquired Howard Ball Moving & Storage at 1417 Lytle Street, gaining 40,000 square feet of storage space and six employees, positioning their operations adjacent to plaintiff's residence for harassment purposes.

8.  On April 20, 2020, Kron Ridge Investments LLC submitted a fraudulent PPP loan application to Stock Yards Bank & Trust Company, obtaining $29,100 through material misrepresentations including: a.      False classification as a legitimate "Used Household

and Office Goods Moving" business b.        False representations about employee count and payroll expenses c.        Concealment of the entity's actual criminal purposes d.        False certifications regarding compliance with PPP eligibility requirements

9. On January 20, 2021, defendants submitted a second fraudulent PPP loan application through the same entity, obtaining an additional $25,000 through similar false representations.

10. Both PPP loans, totaling $54,100, were subsequently forgiven by the SBA, allowing defendants to retain the entire fraudulent amount. The loan applications falsely claimed the proceeds would be used for payroll ($24,999) and utilities ($1), when in fact the funds were used to finance harassment operations and support the criminal enterprise.

**C. The Systematic Harassment Campaign (2018-2025)**

11. Beginning in approximately August 2022, using infrastructure acquired through the Howard Ball Moving & Storage purchase and operations funded by fraudulent PPP proceeds, defendants initiated a systematic harassment campaign against plaintiff through coordinated activities at Central Commerce Park, LLC, directly adjacent to plaintiff's residence, parking 10-11 semi-trailers directly adjacent to plaintiff's privacy fence, in deliberate and willful violation of Louisville City Code 1158.10(12), and plaintiff's posted "Private Property" and "No Trespassing" signage, effectively concealing them from view.

12. On August 12, 2022, Plaintiff witnessed the defendants slam a semi-trailer into her privacy fence, damaging it considerably, snapping and splintering boards on her fencing. She immediately called 311 and complained, documenting the call, complaint number, as well as the name of the person she spoke with. The City of Louisville failed to even follow up the call, and for over three years, Plaintiff has suffered ongoing harassment by Defendants.

13. The harassment campaign includes continuous and deliberate acts designed to interfere with plaintiff's constitutional rights: a.      Industrial noise violations through unauthorized commercial vehicle operations in residential areas b.  Systematic trespassing on plaintiff's property boundaries c.      Intimidation through aggressive positioning of commercial equipment and vehicles d.      Environmental contamination and debris placement affecting plaintiff's property e. Surveillance and monitoring of plaintiff's daily activities f.    Coordinated timing of disruptive activities to maximize psychological impact

14. The harassment operations are directly funded and facilitated by the enterprise's fraudulent PPP loan proceeds, creating a direct nexus between federal fraud and civil rights violations.

15. Defendants deliberately targeted plaintiff as a disabled, elderly woman living alone in West Louisville, a historically underserved community, anticipating limited legal resistance and exploiting perceived vulnerability.

**D. State Court Challenge and Obstruction of Justice (2025)**

16. On June 27, 2025, plaintiff filed a comprehensive legal action in Jefferson Circuit Court challenging defendants' systematic harassment and municipal code violations, with proper service effectuated on July 9, 2025, by the Sheriff's Office.

17. Rather than defend on the merits, defendants strategically chose to default on all claims, avoiding discovery that would expose the full scope of their federal crimes and enterprise operations.

18. Within 48 hours of service on July 9, 2025, defendant Ridge fled to Wyoming and created ASTRELLA FUND, LLC on July 11, 2025, exploiting Wyoming's corporate secrecy laws to conceal assets from anticipated judgment, demonstrating consciousness of guilt and obstruction of justice.

19. Despite being served with legal process and defaulting in state court, defendants have continued their harassment operations and enterprise activities, showing ongoing criminal conduct and contempt for legal authority.

20. Defendant Kron's creation of BK LAW, PLLC on August 26, 2024, demonstrates premeditation and an attempt to obstruct future legal proceedings by cloaking criminal conduct under attorney-client privilege.

**E. Municipal Retaliation and Selective Enforcement (August 2025)**

21. On August 14, 2025, at 4:51 PM, acting on behalf of plaintiff, Anthony Lovell Smith sent formal written notice to Louisville Metro Councilman JP Lyninger and sent the same complaint to the Mayor's office, via the Mayor's office online portal, documenting ongoing violations at the subject property including three semi-trailers parked in violation of city code, referencing prior 311 Complaint No. 80-22-045982 from August 12, 2022, and pending Jefferson Circuit Court litigation Case No. 25-CI-005162.

22. The formal notice specifically requested: (1) inspection of the property to verify violations, (2) enforcement action to remove the three semi-trailers in violation, and (3) written confirmation of the City's intended action within 10 business days.

23. Neither Councilman Lyninger nor the Mayor's office responded to this formal complaint about three years of non-enforcement of municipal code violations.

24. On July 18, 2025, at approximately 7:30 AM, defendants added two additional semi-trailers to the property, bringing the total to five (5) trailers parked in violation of Louisville Metro Code § 1158.10(12).

25. On July 18, 2025, at approximately 12:30 PM, within hours of defendants escalating their violations, Louisville Metro Code Enforcement Officer CHAD HESS arrived at the property.

26. Despite the presence of five (5) semi-trailers in clear violation of municipal code—the exact violations that had been complained about for three years and formally documented to city officials four days earlier—defendant HESS deliberately ignored these obvious violations.

27. Instead, defendant HESS cited plaintiff PAMELA A. BECK for minor cosmetic violations unrelated to the complained-of semi-trailer violations, while threatening her with additional enforcement action.

28. Defendant HESS's conduct caused plaintiff severe emotional distress, intimidation, and fear of continued retaliatory enforcement, witnessed by third parties present at the scene.

29. Following this retaliatory citation of plaintiff, defendants escalated their harassment by adding additional semi-trailers, bringing the total back to ten (10) trailers as of August 19, 2025, demonstrating their understanding that Louisville Metro Government would target the victim rather than address the violations.

30. This pattern of selective enforcement demonstrates Louisville Metro Government's official policy of retaliating against citizens who petition for redress of grievances, particularly residents of West Louisville.

## V. THE RACKETEERING ENTERPRISE

### A. Enterprise Definition and Structure

31. Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4)—a continuing organization with an ongoing organizational structure functioning as a unified entity for systematic federal fraud, money laundering, and civil rights violations.

32. The enterprise has operated continuously since at least 2000, with Kron Ridge Investments LLC serving as the central criminal vehicle since at least 2007, demonstrating the "continuity" required for RICO liability.

33. The enterprise operates through a sophisticated multi-tiered structure: a.    Tier 1: Financial backing through Carlyle Group investment in nationwide Zippy Shell operations b.    Tier 2: Operational control through Kron-Ridge partnership and shell company network c.    Tier 3: Local harassment operations through acquired business infrastructure.

**B.  Pattern of Racketeering Activity**

34. The enterprise has conducted its affairs through a pattern of racketeering activity as defined by 18 U.S.C. § 1961(5), including multiple acts indictable under the following federal statutes:

**Wire Fraud (18 U.S.C. § 1343) - RICO Predicate Acts:** • April 20, 2020: Electronic transmission of fraudulent PPP loan application for $29,100 to Stock Yards Bank & Trust Company •    January 20, 2021: Electronic transmission of fraudulent PPP loan application for $25,000 to Stock Yards Bank & Trust Company •    Ongoing: Electronic communications in furtherance of harassment scheme and asset concealment

**Mail Fraud (18 U.S.C. § 1341) - RICO Predicate Acts:** •  April-May 2020: Postal transmission of fraudulent PPP loan documents and certifications to Small Business Administration •    January-February 2021: Postal transmission of second fraudulent PPP loan application materials •    2020-2021: Mailing of false business records and tax documents related to fraudulent proceeds

**Bank Fraud (18 U.S.C. § 1344) - RICO Predicate Acts:** •April 20, 2020: Material false statements to Stock Yards Bank & Trust Company regarding business operations, employee count, and fund usage •    January 20, 2021: Additional false statements and certifications to

the same financial institution •        2020-2021: False representations regarding loan forgiveness eligibility and compliance

**False Statements to Federal Agencies (18 U.S.C. § 1014) - RICO Predicate Acts:** •        2020-2021: Material misrepresentations to Small Business Administration regarding business legitimacy and PPP eligibility •        2020-2021: False certifications of compliance with federal loan requirements •    2020-2021: Concealment of criminal enterprise purposes from federal agencies

**Money Laundering (18 U.S.C. § 1956) - RICO Predicate Acts:** •2020-present: Systematic use of shell company network to obscure sources of criminal proceeds •        2020-present: Interstate transfer of fraudulent PPP funds through multiple corporate entities •    2025: Creation of Wyoming concealment entity (ASTRELLA FUND, LLC) to launder and hide assets

**Obstruction of Justice (18 U.S.C. § 1503) - RICO Predicate Acts:** •        July 11, 2025: Creation of ASTRELLA FUND, LLC within 48 hours of legal service to conceal assets • August 26, 2024: Creation of BK LAW, PLLC to establish attorney-client privilege shields •        2025-present: Continued criminal operations despite pending federal and state litigation •        2025: Strategic default in state court proceedings to avoid criminal discovery

35. This pattern of racketeering activity demonstrates continuity through repeated criminal acts over a five-year period (2020-2025) and involves at least six separate categories of federal crimes affecting interstate commerce through multi-state operations and federal program fraud.

**C.  Interstate Operations and Commerce Impact**
36. The enterprise operates across multiple states through its network of shell companies, franchise operations, and criminal activities, substantially affecting interstate commerce

through: a.    Multi-state shell company network across Kentucky, Tennessee, North

Carolina, Florida, and Wyoming b.    Nationwide Zippy Shell franchise system with over

71 facilities c.  Federal fraud involving interstate banking and federal agency

communications d.    Systematic targeting of communities across state lines

## VI. CAUSES OF ACTION

## COUNT I: VIOLATION OF 42 U.S.C SECTION 1983-DEPRIVATION OF CONSTITUTIONAL RIGHTS

37. Plaintiff realleges and incorporates by reference all preceding paragraphs.

38. Defendants, acting under color of state law through Louisville Metro Government's policy of deliberate indifference to civil rights violations in West Louisville, have systematically deprived plaintiff of rights secured by the Constitution and laws of the United States, including:

**Fourteenth Amendment Equal Protection:** Defendants have targeted plaintiff based on her residence in West Louisville, a historically marginalized community, her disability status, and her perceived economic vulnerability, denying her equal protection under the law.

**Fourteenth Amendment Due Process:** The coordinated harassment campaign has deprived plaintiff of her fundamental rights to life, liberty, and property without due process of law, including her right to peaceful enjoyment of her property and personal security.

**First Amendment Rights:** Defendants have escalated harassment operations in direct retaliation for plaintiff's exercise of her First Amendment rights to petition for redress of grievances through legal action.

39. Louisville Metro Government's selective non-enforcement of municipal codes and zoning violations, despite 311 complaints from the Plaintiff, while enforcing the same codes in other areas of the city, satisfies the "under color of state law" element necessary for § 1983 liability.

40. This deliberate indifference constitutes an official policy or custom that has caused the constitutional violations alleged herein.

41. As a direct and proximate result of defendants' conduct, plaintiff has suffered irreparable harm including severe emotional distress, physical health deterioration, property damage, loss of property value, and ongoing deprivation of constitutional rights.

**WHEREFORE, plaintiff demands judgment against defendants for compensatory damages, punitive damages, attorney's fees, and costs under 42 U.S.C. § 1988.**

## COUNT II: VIOLATION OF 18 U.S.C. SECTION 1962(c) - RICO SUBSTANTIVE VIOLATION

42. Plaintiff realleges and incorporates by reference all preceding paragraphs.

43. Defendants constitute an "enterprise" engaged in activities affecting interstate commerce that has conducted its affairs through a pattern of racketeering activity consisting of:

**PPP Fraud Scheme (2020-2021):** • Wire fraud through electronic submission of false PPP loan applications • Mail fraud through postal transmission of fraudulent documents • Bank fraud through false representations to Stock Yards Bank & Trust Company • False statements to the Small Business Administration regarding business operations and eligibility

**Money Laundering and Asset Concealment:** • Systematic use of shell company networks to obscure sources and destinations of criminal proceeds • Interstate transfer of assets through

multi-state corporate structures • Post-service creation of Wyoming concealment entity (ASTRELLA FUND, LLC)

**Obstruction of Justice:** • Asset concealment to defeat legal judgments • Creation of attorney-client privilege shields (BK LAW, PLLC) • Continued criminal operations despite legal exposure

44. This pattern of racketeering activity has directly injured plaintiff's business and property through the systematic harassment campaign financed by fraudulent federal loan proceeds and conducted through enterprise infrastructure.

45. The enterprise has operated continuously since 2000, with the PPP fraud representing the latest iteration of a decades-long criminal operation.

## COUNT III: FIRST AMENDMENT RETALIATION - (42 U.S.C. SECTION 1983)

**46. (Against Louisville Metro Government and Chad Hess, Individually)**

47. Plaintiff realleges and incorporates by reference all preceding paragraphs.

48. Plaintiff engaged in constitutionally protected activity by petitioning Louisville Metro Government for redress of grievances through formal complaint to elected officials regarding non-enforcement of municipal codes.

49. Defendants LOUISVILLE METRO GOVERNMENT and CHAD HESS, acting under color of state law, took adverse action against plaintiff in direct retaliation for her exercise of First Amendment rights by: a. Deliberately ignoring the complained-of violations during the July 18, 2025 inspection b. Citing plaintiff for unrelated minor violations while refusing to address the substantial violations she had complained about for three years c. Threatening plaintiff with additional enforcement action to intimidate

and chill her constitutional rights d. Implementing a policy of selective enforcement targeting citizens who complain about municipal non-enforcement

50. The temporal proximity between plaintiff's August 14, 2025, formal complaint to city officials and defendant HESS's retaliatory citation on July 18, 2025, combined with his deliberate ignoring of the complained-of violations, establishes the requisite causal connection between protected activity and adverse government action.

51. Defendants' conduct would chill a person of ordinary firmness from continuing to engage in constitutionally protected activity, specifically petitioning government for enforcement of municipal codes.

52. LOUISVILLE METRO GOVERNMENT is liable under § 1983 based on: a. The existence of an official policy or custom of retaliating against citizens who complain about non-enforcement in West Louisville b. The failure of policymakers (Mayor and Councilman Lyninger) to respond to formal complaints while directing enforcement action against the complainant c. Deliberate indifference to the constitutional rights of West Louisville residents through systematic selective enforcement

53. CHAD HESS is individually liable under § 1983 for violating clearly established constitutional rights by engaging in retaliatory enforcement while acting under color of state law.

54. As a direct and proximate result of defendants' retaliatory conduct, plaintiff has suffered constitutional injury, emotional distress, intimidation, chilling of First Amendment rights, and ongoing harassment as defendants escalated their violations in response to the city's targeting of plaintiff.

**55. WHEREFORE, plaintiff demands judgment against LOUISVILLE METRO GOVERNMENT and CHAD HESS for:**

56. Compensatory damages for constitutional violations and resulting harm

57. Punitive damages against CHAD HESS in his individual capacity

58. Declaratory judgment that defendants' conduct violated plaintiff's constitutional rights

59. Injunctive relief prohibiting further retaliation and requiring enforcement of municipal codes

60. Attorney's fees and costs under 42 U.S.C. § 1988

## COUNT IV: FOURTEENTH AMENDMENT SELECTIVE ENFORCEMENT – 42 U.S.C. SECTION 1983

**61. (Against Louisville Metro Government and Chad Hess, Individually)**

62. Plaintiff realleges and incorporates by reference all preceding paragraphs.

63. The Fourteenth Amendment's Equal Protection Clause prohibits selective enforcement of laws based on impermissible classifications or in retaliation for exercising constitutional rights.

64. Defendants have engaged in selective enforcement by: a. Failing to enforce Louisville Metro Code § 1158.10(12) against defendants' semi-trailer violations for over three years despite formal complaints b. Immediately citing plaintiff for minor violations while ignoring substantial violations by defendants c. Treating similarly situated violators differently based on their status as complainants versus complained-against parties d. Applying different enforcement standards to West Louisville residents who petition for government action

65. This selective enforcement lacks any rational basis and serves no legitimate government interest, instead serving the impermissible purpose of retaliating against citizens who exercise constitutional rights.

66. The pattern of selective enforcement demonstrates discriminatory intent and effect, denying plaintiff equal protection under the law.

67. As a direct and proximate result of this selective enforcement, plaintiff has been denied equal protection, suffered constitutional injury, and been subjected to ongoing harassment as defendants exploit the city's discriminatory enforcement practices.

**68. WHEREFORE, plaintiff demands judgment against LOUISVILLE METRO GOVERNMENT and CHAD HESS for:**

69. Compensatory damages for equal protection violations and resulting harm

70. Punitive damages against CHAD HESS in his individual capacity

71. Declaratory judgment that defendants' selective enforcement practices violate the Fourteenth Amendment

72. Injunctive relief requiring equal enforcement of municipal codes

73. Attorney's fees and costs under 42 U.S.C. § 1988

**74. COUNT V: VIOLATION OF 18 U.S.C. § 1962(d) - RICO CONSPIRACY**

75. Plaintiff realleges and incorporates by reference all preceding paragraphs.

76. Defendants have conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of the enterprise through a pattern of racketeering activity.

77. Evidence of this conspiracy includes: a.    Joint creation and control of Kron Ridge Investments LLC since 2007 b.    Coordinated PPP fraud applications and loan forgiveness c.  Public admission of business partnership and joint investment d.    Systematic harassment operations using fraudulent proceeds and acquired infrastructure e.    Coordinated post-service asset protection and obstruction activities f.    Continued enterprise operations despite legal exposure and default judgments

78. Plaintiff has been injured by this conspiracy through systematic harassment, property damage, constitutional violations, and ongoing interference with her peaceful enjoyment of property.

79. **WHEREFORE, plaintiff demands judgment against defendants for treble damages, attorney's fees, and costs under 18 U.S.C. § 1964(c).**

80.

**WHEREFORE, plaintiff demands judgment against defendants for treble damages, attorney's fees, and costs under 18 U.S.C. § 1964(c).**

## COUNT VI: VIOLATION OF 18 U.S.C. SECTION 1962(d) - RICO CONSPIRACY

60. Plaintiff realleges and incorporates by reference all preceding paragraphs.

61. Defendants have conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of the enterprise through a pattern of racketeering activity.

62. Evidence of this conspiracy includes: a.    Joint creation and control of Kron Ridge Investments LLC since 2007 b.    Coordinated PPP fraud applications and loan forgiveness c.  Public admission of business partnership and joint investment d.    Systematic harassment operations using fraudulent proceeds and acquired infrastructure e.    Coordinated post-service asset protection and obstruction activities f.    Continued enterprise operations despite legal exposure and default judgments

63. Plaintiff has been injured by this conspiracy through systematic harassment, property damage, constitutional violations, and ongoing interference with her peaceful enjoyment of property.

**WHEREFORE, plaintiff demands judgment against defendants for treble damages, attorney's fees, and costs under 18 U.S.C. § 1964(c).**

## VII. REQUEST FOR CRIMINAL REFERRAL

Based on the extensive documentary evidence of federal crimes detailed herein, Plaintiff respectfully requests this Honorable Court to refer this matter to:

1. United States Attorney for the Western District of Kentucky for prosecution of PPP fraud, wire fraud, mail fraud, bank fraud, money laundering, obstruction of justice, and RICO violations;

2. Federal Bureau of Investigation for investigation of the multi-state criminal enterprise and additional victims;

3. Small Business Administration Office of Inspector General for PPP fraud investigation and recovery proceedings;

4. Internal Revenue Service Criminal Investigation Division for tax fraud investigation related to unreported criminal proceeds;

5. Financial Crimes Enforcement Network (FinCEN) for suspicious activity investigation related to shell company money laundering network.

The sophisticated nature of this 24-year criminal enterprise, involving systematic federal fraud, multi-state money laundering, and ongoing civil rights violations, presents substantial federal criminal violations warranting immediate investigation to protect additional victims and preserve evidence of continuing crimes.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully demands judgment against defendants as follows:

1. **Compensatory Damages** in excess of $2,000,000 for constitutional violations, property damage, emotional distress, medical expenses, and economic losses;

2. **Treble Damages** under RICO statutes (18 U.S.C. § 1964(c)) for all enterprise-related losses;

3. **Punitive Damages** in an amount sufficient to deter future criminal conduct and reflect the egregious nature of defendants' violations;

4. **Immediate Injunctive Relief** requiring: a.    Cessation of all harassment operations and trespassing activities b.        Asset freeze of all enterprise entities pending investigation c.        Preservation of all enterprise records, communications, and financial documents d.        Prohibition on creation of additional concealment entities or shell companies e. Suspension of all business operations at Central Commerce Park affecting plaintiff f.        Louisville Metro Government enforcement of municipal codes without selective or retaliatory application

5. **Asset Forfeiture** of all proceeds traceable to criminal activity, including fraudulent PPP loan proceeds and enterprise profits;

6. **Attorney's Fees and Costs** under 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), and other applicable federal statutes;

7. Such other relief as the Court deems just and proper to vindicate plaintiff's constitutional rights and deter future criminal conduct.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Pamela A. Beck Plaintiff Pro Se

1710 W. Burnett Avenue

Louisville, KY 40210

Phone: 502-994-3009

 Email: beckpamela18@gmail.com

**RULE 11 CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 11(b), I, Pamela A. Beck, Plaintiff in the above-captioned matter, hereby certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1. This Complaint is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

2. The claims, defenses, and other legal contentions contained herein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

3. The factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

4. The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of August, 2025, in Louisville, Kentucky.

Pamela A. Beck, Plaintiff, pro se