UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAMELA A. BECK                                                                    PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:25CV-521-JHM

JASON A. KRON *et al.*                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pamela A. Beck filed the instant *pro se* action. She also filed a motion to proceed *in forma pauperis* (DN 11). Upon review, **IT IS ORDERED** that the motion to proceed *in forma pauperis* (DN 11) is **GRANTED**. Her prior motion to proceed *in forma pauperis* (DN 3) is **DENIED as moot**.

This matter is now before the Court on initial review of the complaint and supplemental complaints pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Upon review, the instant action will be dismissed for the reasons that follow.

**I. SUMMARY OF FACTUAL ALLEGATIONS**

Plaintiff sues the following Defendants: Jason Kron; Louisville Metro Government (LMG); Chad Hess, a Code Enforcement Officer employed by LMG; Donald H. Chip Ridge III; Kron Ridge Investments LLC; Zippy Shell of Greater Louisville; Millennial Title, LLC; Legal 1031 Exchange Services, LLC; Kensington Vanguard National Land Services, LLC; Howard Ball Moving & Storage; Central Commerce Park, LLC; Kentucky Bourbon Barrel, LLC; Astrella Fund, LLC; BK Law, PLLC; The Carlyle Group, L.P.; Zippy Shell Incorporated; and John Does 1-50. She alleges claims under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962.

Plaintiff alleges that in 2000 Defendant Kron "began systematically creating shell companies to facilitate criminal activity" and that in 2003 Defendant Ridge "joined the criminal enterprise." She states that Defendants Kron and Ridge set up various companies for criminal purposes, many of which are Defendants named in this action. Plaintiff asserts, "In 2017, the Kron-Ridge partnership acquired Howard Ball Moving & Storage at 1417 Lytle Street, gaining 40,000 square feet of storage space and six employees, positioning their operations adjacent to plaintiff's residence for harassment purposes." She states, "On April 20, 2020, Kron Ridge Investments LLC submitted a fraudulent [Paycheck Protection Program (PPP)] loan application to Stock Yards Bank & Trust Company, obtaining $29,100 through material misrepresentations . . . ." She further contends, "On January 20, 2021, defendants submitted a second fraudulent PPP loan application through the same entity, obtaining an additional $25,000 through similar false representations."

Plaintiff asserts that Defendants "initiated a systematic harassment campaign against plaintiff through coordinated activities at Central Commerce Park, LLC, directly adjacent to plaintiff's residence, parking 10-11 semi-trailers directly adjacent to plaintiff's privacy fence, in deliberate and willful violation of Louisville City Code 1158.10(12), and plaintiff's posted 'Private Property' and 'No Trespassing' signage . . . ." She also states, "On August 12, 2022, Plaintiff witnessed the defendants slam a semi-trailer into her privacy fence, damaging it considerably, snapping and splintering boards on her fencing." She states that she complained to Louisville Metro Government but that nothing was done. She further asserts as follows:

> [] The harassment campaign includes continuous and deliberate acts designed to interfere with plaintiff's constitutional rights: a. Industrial noise violations through unauthorized commercial vehicle operations in residential areas b. Systematic trespassing on plaintiff's property boundaries c. Intimidation through aggressive positioning of commercial equipment and vehicles d. Environmental contamination and debris placement affecting plaintiff's property e. Surveillance

> and monitoring of plaintiff's daily activities f. Coordinated timing of disruptive activities to maximize psychological impact.
>
> [] The harassment operations are directly funded and facilitated by the enterprise's fraudulent PPP loan proceeds, creating a direct nexus between federal fraud and civil rights violations.
>
> [] Defendants deliberately targeted plaintiff as a disabled, elderly woman living alone in West Louisville, a historically underserved community, anticipating limited legal resistance and exploiting perceived vulnerability.

Plaintiff reports that she filed a lawsuit on June 27, 2025, in Jefferson Circuit Court "challenging defendants' systematic harassment and municipal code violations" and that "defendants strategically chose to default on all claims, avoiding discovery that would expose the full scope of their federal crimes and enterprise operations."

Plaintiff states that on August 14, 2025, Anthony Lovell Smith, acting on her behalf, sent a formal written notice to a member of the Louisville Metro Council and the Mayor's office documenting "ongoing violations at the subject property including three semi-trailers parked in violation of city code, referencing prior 311 Complaint No. 80-22-045982 from August 12, 2022," and the Jefferson Circuit Court case mentioned above. She reports that the notice requested "(1) inspection of the property to verify violations, (2) enforcement action to remove the three semi-trailers in violation, and (3) written confirmation of the City's intended action within 10 business days." She states that neither the mayor nor the council member responded to her complaint. Plaintiff further asserts as follows:

> [] On July 18, 2025, at approximately 7:30 AM, defendants added two additional semitrailers to the property, bringing the total to five (5) trailers parked in violation of Louisville Metro Code § 1158.10(12).
>
> [] On July 18, 2025, at approximately 12:30 PM, within hours of defendants escalating their violations, Louisville Metro Code Enforcement Officer CHAD HESS arrived at the property.
>
> [] Despite the presence of five (5) semi-trailers in clear violation of municipal code—the exact violations that had been complained about for three years and

> formally documented to city officials four days earlier—defendant HESS deliberately ignored these obvious violations.
>
> [] Instead, defendant HESS cited plaintiff PAMELA A. BECK for minor cosmetic violations unrelated to the complained-of semi-trailer violations, while threatening her with additional enforcement action.
>
> [] Defendant HESS's conduct caused plaintiff severe emotional distress, intimidation, and fear of continued retaliatory enforcement, witnessed by third parties present at the scene.
>
> [] Following this retaliatory citation of plaintiff, defendants escalated their harassment by adding additional semi-trailers, bringing the total back to ten (10) trailers as of August 19, 2025, demonstrating their understanding that Louisville Metro Government would target the victim rather than address the violations.
>
> [] This pattern of selective enforcement demonstrates Louisville Metro Government's official policy of retaliating against citizens who petition for redress of grievances, particularly residents of West Louisville.

Plaintiff requests the Court to refer this matter to the United States Attorney for this district "for prosecution of PPP fraud, wire fraud, mail fraud, bank fraud, money laundering, obstruction of justice, and RICO violations[.]" She also requests the Court to refer the matter to the Federal Bureau of Investigation, Small Business Association, Internal Revenue Service, and Financial Crimes Enforcement Network. She also requests compensatory, punitive, and treble damages, immediate injunctive relief, and other relief.

Plaintiff also filed two supplemental complaints (DNs 9 and 10). The two filings are similar in substance. Plaintiff alleges that Defendants have now filed answers to her complaint in the Jefferson Circuit Court cases but should have been held in default by that court. Plaintiff also alleges as follows:

> [] On August 14, 2025, Plaintiff submitted a formal complaint to the Mayor and City Councilmember documenting three semi-trailers on her property in violation of Louisville City Code §1158.10(12) and referencing her case in Jefferson Circuit Court. . . .

> [] Following the complaint, Defendants added two additional trailers on August 18, 2025, bringing the total to five, and continued adding trailers throughout the week, despite pending legal proceedings. . . .
>
> [] On the same day, August 18, 2025, at approximately 12:30 p.m., Chad Hess, a city code officer, visited Plaintiff's property. While respectful, Hess did not address the semi-trailer violations. Instead, he warned Plaintiff about one piece of missing siding and a boarded window, pending repair, and said nothing about the five (5) semi-trailers parked in clear violation of city code, or her ongoing complaint. Plaintiff had never previously received a personal visit or citation from the city in the 18 years she's lived there.
>
> [] The temporal proximity between Defendants' trailer additions and Hess's visit demonstrates coordination between municipal actors and private defendants to intimidate Plaintiff and obstruct enforcement of her property rights, satisfying the causation requirement for §1983 retaliation claims.

(Emphasis omitted).

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). This Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, the duty "does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III. ANALYSIS

#### A. § 1983

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

It is not entirely clear from the complaint whether Plaintiff is alleging claims under § 1983 against all Defendants or against Defendants LMG and Hess only. Inasmuch as she is suing all Defendants under § 1983, Defendants LMG and Hess are the only Defendants who are state actors. All of the other Defendants are private individual or entities. Private parties may be held liable under § 1983 only if their "private conduct is fairly attributable to the state." *Moldowan v. City of Warren*, 578 F.3d 351, 399-400 (6th Cir. 2009). The Court has reviewed the complaint and supplemental complaints and finds no conduct fairly attributable to the state by the private parties named in this lawsuit. Therefore, the § 1983 claims against all of the

private party Defendants will be dismissed for failure to state a claim upon which relief may be granted.

As to Plaintiff's § 1983 claims against Defendants LMG and Hess, Plaintiff alleges violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the First Amendment.

In support of her equal protection claim, Plaintiff states, "Defendants have targeted plaintiff based on her residence in West Louisville, a historically marginalized community, her disability status, and her perceived economic vulnerability, denying her equal protection under the law." Even if each of these factors provided a basis for alleging an equal protection claim, Plaintiff's allegation is wholly conclusory and lacking in the required factual specificity to support a claim. *See Iqbal*, 556 U.S. at 678 (complaint not sufficient "'if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557). She alleges no facts to support intentional discrimination by Defendant LMG or Hess.

As grounds for her due process claim, Plaintiff states, "The coordinated harassment campaign has deprived plaintiff of her fundamental rights to life, liberty, and property without due process of law, including her right to peaceful enjoyment of her property and personal security." The Court construes this claim as alleging a due process violation based on being cited by Defendant Hess for a municipal code violation. To state a procedural due process violation, a plaintiff must allege (1) that she had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that she was deprived of that protected interest within the meaning of the due process clause; and (3) that the state did not afford her adequate procedural rights before depriving her of protected interest. *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010). The Court finds that Hess's citation

of Plaintiff "for minor cosmetic violations" does not state a due process violation. *See Murphy v. Moore*, No. 1:24-cv-00226-JLT-SKO, 2024 U.S. Dist. LEXIS 177252, at *32-33 (E.D. Cal. Sept. 30, 2024) (property owners are afforded adequate due process where they are "provided with notice of the building code violations and with an opportunity to appeal") (citation omitted); *Ra v. Orange Vill.*, No. 15-cv-2416, 2016 U.S. Dist. LEXIS 90067, at *5 (N.D. Ohio July 12, 2016) (dismissing due process claim finding that "mailing and delivering housing code violation notices, did not deprive [plaintiff] of any protectable interest").

In regard to her First Amendment claim, Plaintiff states in the complaint, "Defendants have escalated harassment operations in direct retaliation for plaintiff's exercise of her First Amendment rights to petition for redress of grievances through legal action." In the supplemental complaint, she alleges, "The temporal proximity between Defendants' trailer additions and Hess's visit demonstrates coordination between municipal actors and private defendants to intimidate Plaintiff and obstruct enforcement of her property rights." Plaintiff filed copies of two complaints she filed in Jefferson Circuit Court on June 27, 2025, and July 18, 2025, in the docket of this action (DN 8).[1] Neither of the complaints names LMG or Hess as Defendants. Therefore, Plaintiff's retaliation claim against LMG and Hess relies on the assumption that LMG and Hess are acting on behalf of the other private party Defendants to retaliate against her for filing a legal action against them. Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted). There is nothing in the complaint to indicate that Plaintiff's allegation of "coordination" between LMG and Hess and the private party Defendants is any

---

[1] These complaints allege state-law claims against some of the Defendants named in this action, as well as other individual and entities not named herein.

more than speculation on Plaintiff's part. Plaintiff's allegations of retaliation are too lacking in factual specificity to state a claim. *See Iqbal*, 556 U.S. at 678.

For these reasons, the § 1983 claims against LMG and Hess will be dismissed for failure to state a claim upon which relief may be granted.

## B. RICO

To state a civil federal RICO claim, a plaintiff must establish the following elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Johnson v. Pennymac Loan Servs., LLC*, No. 3:23-cv-00875, 2024 U.S. Dist. LEXIS 90098, at *35 (M.D. Tenn. May 20, 2024) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). A plaintiff must allege that defendants "engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring with a ten-year period." *Moon*, 465 F.3d at 723 (quoting 18 U.S.C. § 1961(5)).

> Two or more predicate acts are the 'minimum necessary condition for the existence of such a pattern' of racketeering activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 . . . (1989). However, courts have required plaintiffs to plead more than just the existence of at least two predicate acts. The Supreme Court stated Congress "intend[ed] a more stringent requirement than proof simply of two predicates, but [it] also envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *Id*. The predicate acts must relate to each other such that they have the 'the same or similar purposes, results, participants, [or] victims . . . .' *Id*. at 240; *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012).

*Stratton v. Highland Cnty.*, No. 1:24-cv-444, 2025 U.S. Dist. LEXIS 29427, at *9-10 (S.D. Ohio Feb. 19, 2025).

"[C]ourts in the Sixth Circuit have repeatedly held that a single scheme targeting a single victim is inadequate to constitute a racketeering pattern." *Id.* at *11 (collecting cases). Allegations that "a defendant who engages in several different forms of fraud for a single

9

purpose, to defraud a single victim" through activities surrounding one enterprise fails to state a RICO claim. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) (finding no continuity to support a RICO claim where the plaintiff alleged a single, 17-month scheme to drive single victim out of business); s*ee also, e.g.*, *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (finding that a single scheme to deny marital assets to a single victim during divorce proceedings is not a RICO pattern); *Moon*, 465 F.3d at 725 (finding that a single scheme lasting two and a half years to deprive workers' compensation benefits to one person does not support a RICO claim); *Vild v. Visconsi*, 956 F.2d 560, 569-70 (6th Cir. 1992) (finding no continuity to support a RICO claim where the plaintiff alleged a single, six-month scheme against a single victim); *Cyr v. Fred Battah Real Value Prods.*, LLC, No. 22-10290, 2023 U.S. Dist. LEXIS 20450, at *8 (E.D. Mich. Feb. 7, 2023) (stating that "a scheme involving a single objective to defraud a single victim" does not support a RICO claim); *Percival v. Girard*, 692 F. Supp. 2d 712, 723 (E.D. Mich. 2010) (finding that a single scheme to deprive a single victim of rights under a settlement agreement does not state a RICO pattern).

Plaintiff's allegations amount to a claim that Defendants engaged in a scheme to defraud a single victim, which is not sufficient to allege a pattern of racketeering activity to give rise to a RICO claim. Therefore, the RICO claim must be dismissed for failure to state a claim upon which relief may be granted.

### *C. Criminal prosecution*

Finally, Plaintiff requests the Court to refer this matter to the United States Attorney or other agencies "for prosecution of PPP fraud wire fraud, mail fraud, bank fraud, money laundering, obstruction of justice, and RICO violations[.]" However, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the

Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). A district court has no authority to order a criminal investigation or prosecution, nor cannot it do so itself. *Kuilan v. Zimmerman*, No. 22-5331, 2022 U.S. App. LEXIS 29631, at *2 (6th Cir. Oct. 24, 2022); *see also United States v. Trevino*, 7 F.4th 414, 421 (6th Cir. 2021) ("'[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'") (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). Accordingly, Plaintiff's claims based on her request for a criminal investigation or prosecution must also be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

Accordingly, the complaint will be dismissed by separate Order.

Date: September 2, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiffs, *pro se*
4414.010

11